The next case on our docket is 21-60733. 21-60733 Mr. Carson Thank you, Chief Judge Richmond, and may it please the Court. Section 1983, by its terms, provides for an action at law when someone is deprived of a right secured by the Constitution. The government violates the Fourth Amendment whenever a search or arrest warrant lacks probable cause, or when an officer's warrant affidavit includes false statement or omission with reckless disregard for the truth and the false statement was necessary to the finding of probable cause. The government violates the First Amendment whenever it retaliates against someone because of their criticism of public officials or public policies. At the outset, let's dispense with law of the case that the defendants and the lower court misapplied in this case. Bayou Steel Corp. stands for the proposition that an issue that is not expressly or implicitly decided on appeal does not become law of the case. The law of the case doctrine is not jurisdictional but a discretionary practice that merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power. And that's United States v. Matthews, decided in 2002 in this Court. Matthews also says so long as the case remains alive, there's power to alter or revoke earlier rulings. Further, in Morgan v. Hubert, 2012, this circuit said that when an appeal comes to us on summary judgment with a supplemental record, we cannot rely on law of the case. C.F. Furman explained that where the evidence is substantially different on the second appeal, law of the case is accepted. Now here, neither Franks nor Lozman were issues before the Fifth Circuit in Mayfield 1. Neither was Malley, except for the context of arguable probable cause providing qualified immunity for Officer Curry. The plaintiff's Fourth and First Amendment claims against the city were dismissed on summary judgment. This is the first time this issue is before this Court. The plaintiff's claims against all other defendants were dismissed either under law of the case through misapplication or under Twombly. This is the first time any of those issues are before this Court. This is also the first time that qualified immunity is before this Court for the mayor, for the police chief, and for Officer Harrison. The only issue that's already been decided on appeal is whether Officer Curry is entitled to immunity under Malley, not Franks. The lower court determined that the law of the case doctrine applied. Since Mayfield 1, however, the record is replete with supplemental evidence of retaliatory animus by Officer Curry. This Court is not bound by law of the case, and it's not required to ignore the facts that have been put into the record through summary judgment stage. Now as to Lozman and the First Amendment case claims, this appears to be a first case where Lozman is front and center before this Court. Since some of those facts support Fourth Amendment as well, I'd like to start there. And if Lozman does not apply here, then when does it? When would Lozman apply? Based upon Mr. Mayfield's vocal support for the Tea Party candidate, Mark was arrested, his computers and files taken from his home and office, he was taken to jail, he was immediately the subject of a press release sent by the city with his mug shot in it. The press was there after he was put in a jumpsuit, let out in the courtroom in shackles in an orange jumpsuit, and he received a $250,000 bond in that media-packed courthouse. Now Matthews, which I'm sorry, there was one other thing. The mug shot that I think is important, the mug shot then became the center for a campaign ad in the middle of the primary statewide. There is no probable cause in this case, but even if there was, isn't this type of political retaliation the exact First Amendment deprivation that Lozman is supposed to protect against? What facts would be sufficient, for example, to protect an individual's First Amendment right to pray on a football field, as was just decided in Jefferson, or write a news article, or symbol in church, or criticize public officials? Now if Lozman means anything, it means that Section 1983 protects citizens against these exact types of retaliatory actions. In its 8-1 decision, the U.S. Supreme Court found that government can be liable for retaliation even when the retaliation takes the form of arrest for which there is probable cause. And the reason is simple. According to the Supreme Court, there is a risk that some police officers may exploit the arrest power as a means of suppressing speech. This legitimate concern has been echoed by the Fifth Circuit here in Arismendi v. Nunnery. And in Lozman, the court said Lozman alleges more governmental action than simply an arrest. In particular, he alleges that the city formed a premeditated plan to intimidate him in retaliation for his criticisms. Mayfield alleges more than a simple arrest here. He alleges a premeditated plan, as evidenced by the statements of the mayor and Officer Curry. According to Dow Yoder, who was an assistant district attorney who's friends with Officer Curry, the prosecutors usually decide what charges to bring, but Officer Curry was going after, quote, McDaniel supporters. Dow Yoder called Curry after she arrested the first suspect, the first person arrested, Clayton Kelly, who went by Constitutional Clayton. Curry said, and I quote, here's how I think I can prove vulnerable adult abuse exploitation, but I'm concerned about this. What do you think? When A.D. Yoder said he needed more information to have an opinion, Curry said something to the effect of, I just know there's at least one person, if not more, that need to get arrested, and they are going to get arrested. We've just got to figure out what to charge them with. Curry said, I agree we can't prove the case with what I'm telling you, what you're hearing on the radio, but we've got to work on this. Can't we charge them under the voyeurism statute, and can't we charge them with a trespassing case? That's in the record at 6063 through 64. That conversation was before Mark Mayfield was arrested. Afterwards, the conversations became even more poignant. According again to A.D. Yoder, Officer Victor Curry was, quote, dogging us again, threatening that we don't have the balls to step up to the plate and do what is expected from the DA, or the Madison Municipal Prosecutor, and Dell Danks will. So we've got a choice. Are you going to play ball and do what's expected, or are you going to let somebody else carry the water? Record on Appeal 6142. A.D. Yoder's description of his conversation with the mayor was even more troubling. Quote, basically fussing at me for not being on the right side, and you know, if the DA's office is going to be scared to prosecute these McDaniel supporters, I've got Butler Snow and Andy Taggart. They are just drooling, ready to get started prosecuting me. If y'all can't do your job, we'll be glad to get Butler Snow. Record 6099. As it relates to the motion for summary judgment, these are examples of retaliatory animus, much clearer than the typical case. There are many other examples I invite your honors to look at. Further, under Twombly, the retaliatory animus can be inferred from the long, detailed complaint here, which specifically accuses the government actors of political retribution. It would have a chilling effect if the local government can retaliate against Mark Mayfield for his political advocacy of a Tea Party candidate. Section 1983 should likewise apply to hold the government accountable for retaliation against Mark, as well as the government's unlawful arrest, search, and seizure under the Fourth Amendment. Turning to the Fourth Amendment, unlike Lozman, here Mr. Mayfield has a Fourth Amendment claim. There are four main points to consider. First of all, under Malley, probable cause does not exist. It was presumed to be present in Lozman. In this case, however, there is none. Second, Franks v. Delaware applies. Third, qualified immunity does not require widespread protection for all government actors. His arrest was not warrantless. Rather, his search and arrest was based solely upon premeditated warrants. This Court has made a distinction in Ayers-Mendee and in Vance v. Nunnery based on that exact reason. As to the mayor, her dismissal is in error because she enjoys no immunities under Section 1983 for her First and Fourth Amendment violations. Where the independent intermediary doctrine is inapplicable, as with the mayor, so is probable cause. Lozman could not have created anything new as it relates to the mayor, but that's the express reason she was dismissed at the trial court level. Fourth, here two of the three Monel factors apply. The second is custom, and the third falls under a specific act of a government actor. And I notice I'm at 4-3, so if you please, the Court, I'll reserve the remainder of my time. No, you've got... Oh, I'm sorry. This is 15. Oh, okay. All right. Thank you. Okay. So let's talk then, let's walk through those. As to the first probable cause, Officer Curry's arrest warrant and Harrison's search warrant were based on two different crimes. One was voyeurism, that was Officer Curry. The other, as to Officer Harrison, was under the Vulnerable Adults Act. Vulnerable Adults Act requires physical injury to the victim. In this case, that would be Ms. Rose Cochran. What crime did Mr. Mayfield commit then? What conspiracy did he have? Well, the evidence shows that there was no conspiracy with Mr. Kelly, who was three people removed, or anybody else, to take a photograph of Ms. Cochran with lewd, licentious, or indecent intent. And that statute requires that. It does not simply say, if you go take a picture of somebody, even if they're in a position where they would expect privacy, that alone does not make it a felony crime. And the court, in sending his ruling as to that, never determined that there was a finding that Mark Mayfield had done anything related to voyeurism or related to vulnerable adults. There was no physical injury. These are not facts in dispute. What the court found was that it was possible that some of the co-conspirators, he doesn't even say Mr. Mayfield, but some of the co-conspirators could have made an agreement to trespass. Trespass, by the way, is a misdemeanor, not a felony. It certainly can't be the basis of a felony conspiracy. He also found that there could have been invasion of privacy. Invasion of privacy is a civil action, not a criminal action. But even taking that, what does the Fifth Circuit say about that? Well, the related case doctrine does not apply in cases where there are warrants. And the Fifth Circuit has upheld that over and over and over again. This is not a warrantless case where the officer has to make an on-the-spot decision. This court has a robust history of defending those types of officers who have to make a split decision in the field. But this court also has weighed that against warrant searches and warrant arrests, and has come to the conclusion, both in Vance and Nunnery, and then it was reiterated in Ayers Mundy, that when there is a warrant arrest, as distinguished from warrantless, the related case doctrine does not apply. So even if somehow those other elements could be met for those other crimes, and we submit they could not have been for trespass, Mr. Mark Mayfield's mother was in this facility, he went to visit there legally, he could invite anybody there, and his Facebook messages say, anybody could just come on in. So even if that's the case, there is no Malley probable cause, in this case, as to those crimes. Now, briefly hit Frank's, and I suspect I'll get back to it, is that in this case, the Frank's exception applies any time that an officer either submits false statements or omits statements that would have shown that there was a lack of probable cause. In this case, the only evidence that the officers had were Facebook messages between Mark Mayfield and John Mary, and those show unequivocally that the intent was a political intent, and the intent was to get a good, clear picture. They could not find a picture on the internet to show Ms. Rose Cochran, so they wanted to get a good, clear picture, and that's the exact words used, and that was the exact intent, and that was left out. The Facebook messages were left out of the arrest warrants. Not just Curry's and Harrison's, but all the other ones. So I'll reserve the remainder of my time, Your Honor. Thank you. May it please the Court. Katie Pickett for the City of Madison, Mayor Mary Hawkins Butler, and Janet Danks. Because the plaintiffs have not addressed the grant of qualified immunity to the mayor in her individual capacity, and because the plaintiffs have not addressed the jurisdictional problems with the discovery issues that impact Janet Danks and the mayor, I would like to focus today on the claims against the city. The court should affirm summary judgment on the plaintiff's First Amendment claim, because the plaintiffs failed to come forward with objective evidence of a premeditated official policy of retaliation, and the court should affirm the dismissal of the plaintiff's Fourth Amendment claims, because plaintiffs failed to adequately plead municipal liability, and they failed to show an underlying Fourth Amendment violation. So turning first to the First Amendment claim, Lozeman v. City of Riviera Beach represents a narrow, fact-specific exception to the ordinary rule that to show a First Amendment retaliatory arrest, a plaintiff must show an absence of probable cause. Under Lozeman, that exception requires objective evidence of a premeditated policy of retaliation. So what's the Mississippi state crime that you would want to most focus on here today, committed by Mr. Mayfield, under your theory? He was arrested for conspiracy to violate 972963. I might have that backwards, 2963. 972963? Yes, Your Honor. Okay, that's the one with lewd, licentious, or indecent intent? Yes, Your Honor. And what's your theory on the lewd, licentious, or indecent intent at issue here? Is it lewd? I believe that it is lewd and it's indecent. It is both, and I believe that the Mayfield v. Curry panel in deciding qualified immunity found that all of the evidence submitted to the neutral magistrate, the warrant applications, demonstrated that the evidence was... We've heard from opposing counsel their theory that they just wanted a picture, a clear, well-done picture. I think you disagree with that narrative. Yes, they wanted a clear picture of Ms. Cochran, a woman who had had dementia for 14 years, lying in her bed. A picture of her taken without her consent, with her eyes closed, with her mouth open. And the description in the record of that picture, as plaintiffs described it, the picture was... I'll certainly... It sounds like it's undisputed that it was non-consensual, without question. And if the statute were a photograph without consent, you might have something. But obviously, the statute requires more than that, right? It requires lewd licentious or indecent intent. So what are the facts that you would point to to get to that, besides the lack of consent? Well, the fact that she's in her bed is a fact that shows that it's indecent. The fact that other McDaniel supporters described the picture as robbing Ms. Cochran of her dignity, would show that it's indecent. The fact that the McDaniel supporters, or the Rose Cochran co-conspirators, intended to use this picture to compare and contrast the physical appearance of a woman with her husband's alleged paramour, in order to shame him for having an alleged sexual affair. I believe that those are facts that would be enough to rise to the level of probable cause, which, of course, is not the same level that would be required to convict Mr. Mayfield under that statute. It only requires a probability, a reasonable belief that a crime had been committed. And the Mayfield v. Curry panel, in deciding qualified immunity for Officer Curry, found that the facts submitted to the neutral magistrate in the warrant applications clearly were sufficient, not just arguable. Your point is, our panel is bound by law of the case. Yes, Your Honor. Yes, Your Honor. You mentioned probable cause, but the Lozman claim gets around the absence of probable cause, so why don't we get to that point? Yes, Your Honor. The Lozman does not turn on the existence or absence of probable cause. It requires a premeditated policy. And the district court, in this case, correctly found that the summary judgment evidence did not establish that. The plaintiffs point to statements made by Officer Curry. But Officer Curry's not a final policy maker for the city, and her statements are not evidence of an official policy. So in contrast, in Lozman, the objective evidence that the court found was sufficient was a transcript of a city council meeting, where the city council agreed on a plan to, quote, intimidate the plaintiff in response to the plaintiff having brought a lawsuit against the city. There's no similar evidence here. So Dow Yoder's statement at his deposition that if the mayor, that supposedly the mayor said that if the DA's office is scared to prosecute, that Butler Snow would be willing to do so. The district court found that that wasn't evidence that the mayor wanted or that the city wanted or that anyone wanted. The Rose Cochran conspirators prosecuted because of their support for Chris McDaniel, so it's not evidence of a First Amendment retaliatory policy. The district court also found that all of the summary judgment evidence showed that, quote, the police were given free reign to conduct their investigation as they saw fit. There was no evidence that the mayor ordered anyone arrested or that the mayor decided what charges anyone should be charged with or that the mayor assisted in any way in the preparation of any warrant affidavits. Now, the Plaintiff's Council referred to Twombly in discussing the Lozman claim, and I was confused by that because that claim was decided on summary judgment. It was their burden to come forward with evidence to show a genuine dispute of material fact, which they did not do. I would also like to point out to the court that this alleged statement by the mayor, Mr. Yoder said that that statement took place after all of the Rose Cochran conspirators had been arrested. And that is at record 6097 to 6098. And therefore, it can't be evidence of a premeditated policy of retaliation. And for that reason, we would ask that the court affirm the grant of summary judgment on the Lozman claim. So your point is essentially, I wanna make sure I understand the argument that under Lozman, you have to have a municipal policy at the city council level or some sort of leadership level. If a police officer is engaged and admitted, political retaliation, that wouldn't matter. Yes, your honor, because Lozman is, I believe, a species of Monet, essentially. And Neves versus Bartlett addresses a claim against an officer for retaliatory arrest. And Neves versus Bartlett has a different standard than Lozman. It holds that probable cause is required unless a plaintiff can show a pattern of conduct in which other people have not been arrested for similar crimes, and that person has been. So, which isn't really the city's issue, that's more the officer's issue, but. Pardon me, I thought maybe you're representing only the city and the mayor, right? We have others coming up for the officers. Yes, your honor. I'd like to briefly note, the district court correctly dispensed the fourth amendment claims against the city on a 12B6 standard, not on summary judgment. The district court did not elaborate why it was doing so. It simply stated that based on the amended complaint, it could not see how the city or its mayor had violated the plaintiff's constitutional rights. But this court can affirm on any basis apparent in the record, and the plaintiffs failed to adequately plead a Monell claim. Of course, there's no respondeat superior under section 1983. To state a claim against a municipality, a plaintiff must plead facts showing an official policy was the moving force behind the constitutional violation. Here they failed to plead those facts. What they argued to the court below was that they had adequately pleaded a single decision of a final policymaker. And they identified that policymaker as the mayor, and that is at record 419 and record 428 to 429. However, when the court examines the amended complaint, there are no allegations specific to the mayor that could constitute an official policy. What the plaintiffs allege is that the mayor received a phone call from Don Clark, was told that a crime had been committed in the city of Madison, and referred Don Clark to the police chief. There is no allegation, just like there was no proof at the summary judgment stage, that the mayor ordered anyone arrested, or that the mayor formulated what charges to bring against any of the Rose Cochran co-conspirators. For that reason, the district court correctly dismissed the Fourth Amendment claims because there just aren't facts pleaded for the city to be liable under a Fourth Amendment theory. Very briefly, Your Honor, I would like to point out that Plaintiff's counsel has relied very heavily on Vance and Harris-Mendy, neither of those two cases addressed a situation in which multiple warrant applications were submitted to the same neutral magistrate at the same time. Judge Willett relied on United States versus Hill and his concurrence in Mayfield versus Curry to state that it was proper for the municipal judge to consider all of the warrant applications, not just each one in isolation. We would submit that that was correct. I see that my time is expiring. We ask that the court affirm the dismissal of the claims against the city.  May it please the court. My name is Roy Smith. I represent Vicki Curry, Chuck Harrison, and Chief Waldrop. If he's actually in the appeal in this matter. At first, Chief Waldrop, he's the final judgment of all defendants which weren't listed in the appeal, but other than that, his name doesn't appear. There are no issues raised by the plaintiffs as to Chief Waldrop. He was dismissed initially because the plaintiffs failed to plead any facts or specific violations of the Constitution that he made. So he's out of the case and that should be affirmed. The plaintiffs hadn't argued anything different than that and didn't even mention it in their brief. So Chief Waldrop should be affirmed. As to Vicki Curry and Chuck Harrison, they are the officers that were involved in all of the arrest of Clayton Kelly, John Mary, Mr. Sager, and Mark Mayfield. In this particular case, Judge Dale Danks was also the judge, magistrate judge, who signed the warrants and applications for arrest and search and seizure with regard to each of those four people. Mark Mayfield was the last of the four. So the judge had a lot of information and facts, sworn affidavits before him when he signed the arrest warrant that Vicki Curry presented and the search warrants that Mr. Harrison, Officer Harrison presented. As you know, the court previously on interlocutory appeal ruled with regard to Vicki Curry and the court ruled that under Mailey that she was entitled to, that there was proximate cause, that it was clearly established law and we want, she won on Mailey and it was remanded back to the district court to make a Franks consideration. The district court did consider that and, Your Honor, the court has the judge's order on that and he found that there was no Franks violation and that Vicki Curry was entitled to qualified immunity. What do you make of the quotes that we just heard from opposing counsel about the alleged political agenda by, I guess it's Officer Curry? There's no evidence whatsoever that Vicki Curry or Harrison have any political connections to anybody. Is that what you're asking me? Well, I guess, yeah, I mean, these quotes that opposing counsel just read, I've got the transcript up about Vicki is dogging us again, threatening that if we don't have the balls to step up to the plate and do what's expected, Butler Snow and Andy Taggart will. So are you going to play ball and do what's expected or are you going to let somebody else carry the water? Well, first of all, all of that, Your Honor, that's not in the amended complaint. That's not in the police records. That is from the deposition of the ADA, right? That was from a deposition taken after the case was filed after the 12B6 motions and we were not, there was no discovery with regards to the qualified immunity 12B6. So a lot of things that he talked about, they are not in the record on the qualified immunity motions that we filed. The only thing that could be looked at is the amended complaint, what's pled, and the documents referenced in the amended complaint, which is some of the police records and documents. That quote you're talking about there is from Dow Yoder, an assistant district attorney who was deposed well after the case was filed. That's not even in the record as to the officers on their qualified immunity. Okay, so I take your point that we're not allowed to rely on this as a legal matter. I accept that argument. Let's now ask the alternative question. If this were a valid part of the record, what then? Is that your only argument, that this is just not? No, no, it, that's a good argument, but that's not my only argument. The other argument. That's why I want to ask. The other argument is that that's just one person making a statement. I can't remember the case that we've cited in our brief, but there's a case where somebody claimed that the DA was influencing the grand jury and the court said that by making some statement and the court said that just a bare assertion or saying that a fact existed or they didn't know this or they knew this, that's not enough to defeat qualified immunity. I'm sorry, I can't think of that case. I may find it in a minute. I'm not sure I understand your point. Is that we should discredit this statement as an evidentiary matter? Is that your point? I mean, the allegation of this statement is that this officer was essentially pressuring action. Like either the ADA is going to take care of this or they're going to have other people take care of this. Are you saying that that's, what is your position on this? That we just shouldn't believe it? It's not relevant to this matter that we've got and that that is just a statement that's not in the record against us and there's no proof other than that hearsay statement that it's even true. So, that's all I'm saying. Okay, so your argument is it's not in the record and it's an invisible hearsay. And your Honor, as far as the, on the qualified immunity case, part of the case for the police officers, I think that it is the law of the case that the approximate cause was found by the prior panel in the Curry decision because they agreed that there was clearly probable cause for the arrest and so that carries over to the search too because it's on the same type of item that they've been getting before. As far as the plaintiff's arguments about, under Frank's, about false information, everything that the officers knew, and they knew a lot. They had, you know, looked at Facebook information. They had interviewed Mary and Clayton Kelly and Sager and each time they got more information as to Mark Mayfield. And there was no doubt that these officers had reasonable belief and it was reasonable for them to believe that they had probable cause to charge Mark Mayfield and arrest him and provide the information that was provided in the arrest warrants and the search warrants. The arrest warrant was under the 97-29-63 and the search warrant, Harrison, put the 43, what the other statute, 43-47-19-3, and then on a note, there's a written, handwritten thing that said it should be 43-47-19-2, which is a different subsection. But the point about these is they have done all this investigation. They've interviewed these witnesses. They have developed facts and information that these people and then Mark Mayfield were conspiring together to sneak into the nursing home, go into the bedroom of Ms. Rose Cochran and take a picture of her in bed. They know she's bedridden. So how can they say that, you know, that it wasn't indecent? But they go in there, this guy sneaks in there posing to be a family member and takes this picture and then goes out and puts it on the internet in a YouTube video. And they say that was for political purpose. May have been for political purpose, but the photograph and the conduct of all these people clearly they came in and took an indecent photograph. And indecent, we went into our brief about the black law. What's your best Mississippi case defining indecent that shows that that picture was indecent? Do I have a Mississippi case? I don't, Your Honor. On the definition of indecent? No. But I have, I've cited, we've cited in our brief Mississippi cases that talk about statutory construction and that you, that Mississippi does allow you to go to the plain meaning if the statute is ambiguous. You've substantially exceeded your time. Oh, sorry. I had more to say, but sorry. May it please the court, Simon Bailey for the Butler-Snow appellees. As to Butler-Snow, this is really a single issue appeal. A reasonable person who knew what Butler-Snow knew on May 15, 2014 would have made a report to the authorities. And that's what Butler-Snow did. At that time, Butler-Snow knew that someone had gained access to the St. Catherine's Village nursing home, had gone to the private bedroom of a bedridden and elderly woman, had taken an unauthorized and appalling photograph of her in the privacy of her bedroom in her bed, and had posted that photograph online in a YouTube video. At the time, Butler-Snow had no idea that Mark Mayfield had any involvement in these events, and therefore, its report to the authorities made no mention of Mark Mayfield. And that's a fact that is conceded by the Mayfields in both their primary brief and in their reply brief. A lot of people who have reviewed the basic set of facts known to Butler-Snow at that time have concluded that the facts support probable cause to conclude that a crime likely was committed. That fact, that conclusion, was reached by the Madison police. It was also reached by the municipal court judge who issued the warrants. It was also reached by the other criminal co-conspirators, all of whom pleaded guilty to various crimes. It was also reached by a prior panel of this court in Mayfield versus Curry, and also by the district court judge who presided over this case. And because it was reasonable for Butler-Snow, knowing what it knew at the time, to reach the same conclusion that all of these other people reached, and to act accordingly, it was not actionable for Butler-Snow to then make its report. And as to Butler-Snow, this case is really that simple. You will note that in the argument presented by Mayfield's counsel, Butler-Snow's name was not mentioned. No argument was made against it except for channeling this quote that Mr. Yoder believes he heard someone make about Butler-Snow. Of course, that's not anything Butler-Snow said or did, and it's also not pleaded in the amended complaint, which was the basis for our dismissal. Again, private citizens enjoy wide latitude in making reports to the authorities. Our conduct fell comfortably within that latitude, and we really have nothing further to offer the court except I stand open for any questions the court has for me. Thank you. Mr. Trice, would you add four minutes to Mr. Carson's time? Four? Thank you, Your Honors. If I may, I may kind of take those in reverse order first with Butler, as it regards Butler-Snow. Under Bivens, there is a claim, and the fact that we didn't have sufficient room in our brief to address all of these things does not mean they're not important. Butler-Snow is where this all started. Butler-Snow was the campaign law firm, and there's just two facts I want you to note for this, and then I'll move on. The first is that Butler-Snow brought in its white-collar division. They brought in their former federal prosecutors that were intimately involved, that were there at the first meeting. This is not one of those where somebody just goes down to the courthouse and files a charge. They also sat on it for three weeks and waited until this was in the primary. The other fact that is of note is that D.A. Yoder said that the chairman of Butler-Snow came to the meetings and met with the prosecutors. So, I submit under Bivens and under this court's ruling that just came down, it's so recent that I just saw it yesterday, for the first time, Tillinger, if I'm saying that right. In that, that was an interesting case where you had bikers, there was a shooting, nine people dead, 177 people were indicted, 31 of them became plaintiffs, in a civil rights case, and in that case, the court held that the prosecution could not just use a form affidavit. And I submit to you, if you look at the affidavits in this case, that's exactly what the prosecutors did in this case. They took a form, they copied it, and they submitted it. And in that, there's no evidence or allegation specific towards Mark, but I'll come back to that. The other is that in going through what the, and this relates to what the city sort of challenged us on just then, which is they say that, and these are all genuine disputes, Your Honor, obviously any circumstantial evidence can be used to show retaliatory animus. In fact, most of the cases are circumstantial. But the evidence here is direct. You already heard about the prosecution, where the mayor was intimately involved in prosecution, and I'll submit to you that new case should be reviewed, because it's almost on point where a prosecutor was not accepted, and under Frank's, the Frank's standard. By the way, have you filed a 28-J on that case? No, Your Honor, I saw it last night. I didn't think so. Yeah, I'll do that, though. If Your Honors, if that would be satisfactory. So let's get back, though, to their point that there was not evidence of animus before the arrest. And I'm going to cite to the record again, record 6026-327, where again, ADA Yoder says, Vicki Curry, quote, explained to me that the reason she was directed not to communicate with me about targeting these people for arrest and criminal prosecution, because it was political. They were intentionally targeting people who they described as Chris McDaniel supporters. And they thought that because I had expressed some benign policy advocacy on behalf of Chris McDaniel, that I was disqualified due to having a conflict of interest. But since they were affirmative supporters of Senator Cochran, they didn't recognize any conflict of interest in using their position of authority to use a felony criminal arrest. Did you say 6026? 6026? If I've written it down right, 327? I may not be right. Okay, I will go back and look. It may be 6226, Your Honor. I'll go back and check that site, though. And the other, and use their conflict of interest in using their position of authority to use a felony criminal arrest or any kind of arrest as, in essence, as a political weapon. At 6272, if I wrote that down right, he says, in trying to express all of this in a concise summation, I would say that when this case started, there was a motive to arrest people who could be identified as Chris McDaniel supporters for the U.S. Senate race. 6273, the timing of the arrest was intended to influence the Republican primary. And I don't remember the day, I don't remember when the Republican primary for U.S. Senate was, but it was timed so as to allow enough time for the story to spin and to generate other stories and to impact people's perception of, you know, Chris McDaniel and the Thad Cochran campaign. This is from the mouth of the assistant district attorney. I submit to you, it does not get more on point than that for Lozeman. If Lozeman does not apply in this circuit, in this instance, when does it? This was what Lozeman was made for. Now, as to the city's argument as to— But on Lozeman, I think opposing counsel appropriately notes, it's sort of a, you've got a Monell-type problem when it comes to municipalities, right? Well, no, Your Honor. Municipalities are subject to Monell, and we can address those. The mayor is not. I don't know where the lower court got this— I'm sorry, just to clarify, you've got a First Amendment claim, not just against the municipality, but also against all the individual officials? Yes, Your Honor. Yes, Your Honor. There's a First Amendment claim against the mayor who made these statements, some of which we've put here before the court. The mayor is not subject to the intermediate, independent, intermediate doctrine. Malley doesn't apply. Lozeman doesn't apply. None of those apply to the mayor. The mayor's actions go back to just a pure 1983 claim, and that has no immunities, no exceptions to it. And the Supreme Court has held that in Embler and then in Owen, which recognized where we're going, Your Honor, on city municipalities being considered persons for Section 1983. It creates a species of tort liability that on its face admits no immunities. Its language is absolute and unqualified, and no mention is made of any privileges, immunities, or defenses that may be asserted. Rather, the statute imposes liability on every person, which held in Monell to apply to the cities, who under color of state law or custom subjects or causes to be subjected any citizen of the United States to deprivation of any rights, privileges, or immunities secured by the Constitution and laws. Now, the lower court dismissed it on the basis that— Time is running out. Can we talk about this— Yes, Your Honor. —at 972963? Of the voyeurism statute? Yeah, because I take it that's what the opposing counsel is drawing a lot of focus on. What do you make of their point that it's obviously in decent intent? You're taking a picture of an elderly bedridden woman in her bed. Yes, Your Honor. Obviously not without her—obviously not with their consent. I'm very glad you asked that, because in your questioning for the qualified immunity for the officers, you asked that question. Gilmer v. State is a Mississippi Supreme Court case that's on all fours. In that case, that was argued as too indecent. The front and center thing was not a facial challenge to constitutionality, but the court says it's constitutional because it has lewd and licentious in it. And so any argument to the contrary that this covers indecent would not only go contrary to Gilmer, but it would be the wrong construction in that it would make it unconstitutionally vague and broad when the courts are to interpret statutes to not make them constitutional and broad. So I would submit two bases. First, their interpretation is not pursuant to the general rules of construction for statutes to make them constitutional. And second, Gilmer defeats that argument. It also, Your Honor— Did you cite Gilmer? Gilmer v. State. I apologize if I've missed that. I did, Your Honor, and I can get that exact cite for you. I found it, actually. Gilmer v. State, Mississippi, 2007. Yes, Your Honor. And so is your point that under Gilmer, the indecent term is not operative by operation of that decision? Well, it has to be read in conjunction with lewd and licentious. It's not— But it does no independent work? Is that your theory? It's not a standalone. And that's what Gilmer says. And that's— So in other words, under your theory, it's either lewd — it has to be lewd or licentious. Yes. Licentious. Intent— If it's indecent but not lewd or licentious, your point is it is not illegal under the statute. That's correct, Your Honor. And on top of that, as it relates to Mr. Mark Mayfield, he had to have intent to enter into an intentional crime. And here, that goes back to the Franks issue where the officers did not put in there the Facebook messages, which were the only things they had. They had phone records and Mr. Mayfield's records, and they had the statements of John Mary and Mr. Kelly that all showed that there was no intent to take even an indecent photograph considering that this was to be used in a campaign ad. And the evidence also shows John Mary in his deposition says never in a million years. What do you mean that it wasn't indecent given that it was going to appear in an ad? Can you explain that? No, that was not their intent. Their intent was to get a good, clear picture, and the reason was they couldn't find— But it was clearly to embarrass the opposing candidate. I'm sorry? I mean, the intent was to embarrass the opposing candidate. Well, it's to criticize a public official, and the city's argument was that's probable cause. That's exactly what they said. Shaming a public official is probable cause. No, it's not. There has to be a violation of a criminal statute for there to be probable cause. The elements— I thought the idea behind the opposing counsel's theory is that you're trying to get an embarrassing picture of this woman in order to embarrass— No, Your Honor. So tell me what— No, Your Honor. That's completely against the evidence. All the evidence that the police officers had was the opposite, that this was meant to just have a picture of Rose Cochran to compare her against the woman that was in the press being claimed to be Ms. Cochran in D.C. That was it, and whether it was a good idea or a bad idea, as to Mark Mayfield, his crime was showing Richard Wilburn where the room was, where Richard Wilburn then called apparently John Mary or Clayton Kelly and told them, but there's no nexus of connection, even alleged in the affidavits, much less in fact probable cause, that shows that they had any evidence that there was any intent, even on Mr. Kelly, but I don't think we even go there. The intent, based on conspiracy, is Mr. Mark Mayfield's intent, and if there's no intent to commit a crime, if there's no intent to have unlawful activity, then there is no probable cause, arguable or in fact, and if there is none, then you don't even have to go to Lozman. You certainly don't go to Malley, you know, because that is there, and the mayor is not subject to any of that anyway. Her statements and her and Officer Curry's statements show a premeditated intent. If Your Honor will allow me just to read one other part of the deposition transcript. In that same transcript, and I've got it written down as 6161, did you have any conversations with Vicki Curry about the fact that she did not have any evidence of physical pain to do with? That was the second allegation in the search warrant by Officer Harrison. She admitted, and everyone admitted, that we could not prove any of that in subsection three, but not even by a preponderance of the evidence, much less beyond a reasonable doubt. Question. You said she admitted. Who else did you talk to that admitted that? Answer. Everybody that I communicated with about it. I mean, everybody from Michael Guess, the district attorney, to I saw Andy Taggart at the time, and I said, well, whose idea is it that it's vulnerable adult abuse? Why are you even getting involved? Well, you know, we got word from maybe the DA's office was afraid to step up to the plate and arrest these McDaniel supporters. So the record is replete with evidence of that. Yes, some of it came after the fact, but this court's holding in United States v. Matthews shows that when the record has been supplemented, this is the exact case to use it on. If not this case, where Lozman facts are now present, then when? And I will also just briefly state that any suggestion that this court lacks jurisdiction to hear the motions to dismiss of the officers that were early in this case, this is the first time this is before this court. Okay. Thank you, counsel. Thank you all. I appreciate it, Your Honor. The cases that we heard this morning, they are under submission.